# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### WICHITA FALLS DIVISION

| | | |
|---|---|---|
| JAMES WOODY BOWLES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:20-cv-00112-O-BP |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

The Social Security Commissioner denied James Bowles's application for Supplemental Security Income upon deciding that Bowles was not disabled. At issue is whether "substantial evidence" supports this decision when the administrative record lacks a medical opinion addressing how Bowles's alleged mental impairment—severe depression—affects his ability to work. Finding the decision unsupported, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **REVERSE** and **REMAND** this action for further proceedings.

## I.       STATEMENT OF THE CASE

Sixty-three-year-old James Woody Bowles seeks Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"). Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 17-1 at 137. Bowles alleges suffering from physical and mental disabilities, including depression, arthritis, anemia, and psoriasis. Tr. 35–43, 169. The Commissioner decided he was not disabled and denied his application. Tr. 79–82, 84–86. Bowles requested a hearing before an Administrative Law Judge ("ALJ") (Tr. 87–89), who conducted the hearing (Tr. 26–51) and affirmed in a ten-page decision. Tr. 10–20. After the Appeals Council denied review (Tr. 1),

Bowles filed this civil action seeking judicial review under 42 U.S.C. § 405(g). *See* ECF No. 1;

*Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (citing 20 C.F.R. § 416.1400(a)(5))

("[T]he Commissioner's decision does not become final until after the Appeals Council makes its

decision denying the claimant's request for review."). Bowles argues that (1) substantial evidence

does not support the ALJ's residual functional capacity ("RFC") determination; and (2) the ALJ's

decision relied on testimony elicited from a defective hypothetical question. ECF No. 19 at 1.

**II.    STANDARD OF REVIEW**

Title XVI of the SSA, codified at 42 U.S.C. §§ 1381–1383f, governs SSI applications.

*Hollis v. Bowen*, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988).  A person is "disabled . . . if he is unable

to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To

decide whether a claimant is disabled and thus entitled to SSI, the Commissioner employs a

sequential five-step evaluation process. 20 C.F.R. § 416.920(a).

First, the claimant must not be presently doing any substantial gainful activity. *Id.*

§ 416.920(a)(4)(i). "Substantial gainful activity" is work that "[i]nvolves doing significant and

productive physical or mental duties" and "[i]s done (or intended) for pay or profit." *Id.* § 416.910.

Second, the claimant must have a severe impairment or combination of impairments. *Id.*

§ 416.920(a)(4)(ii); *see also Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). Third,

disability exists if the impairment or combination of impairments meets or equals an impairment

listed in the SSA's statutory list. 20 C.F.R. § 416.920(a)(4)(iii) (referencing 20 C.F.R. pt. 404,

subpt. P, app. 1). Before proceeding to steps four and five, the Commissioner assesses a claimant's

RFC, *id.* § 416.920(a)(4), (e), which is "the most [a claimant] can still do despite [his] limitations."

*Id.* § 416.945(a)(1). Then fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his past relevant work given his RFC. *Id.* § 416.920(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, education, age, and work experience. *Id.* § 416.920(a)(4)(v); *see also Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). "The claimant bears the burden of showing [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). If the Commissioner decides the claimant is or is not disabled at any step, then the process ends. 20 C.F.R. § 416.920(a)(4).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis*, 837 F.2d at 1382. "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the

courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III.    ANALYSIS

Determining a claimant's RFC is the ALJ's responsibility. 20 C.F.R. § 416.946(c); *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012). Even if the ALJ errs, reversal is only proper if prejudice results. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Here the ALJ's decision proceeded through the five-step evaluation process. Tr. 11–20. The ALJ determined Bowles's mental and physical RFC after step three. Tr. 15–19. For the mental RFC, the ALJ analyzed two medical opinions of record, each provided by state agency medical consultants ("SAMCs") who deemed Bowles's depression "non-severe." *See* Tr. 18–19. The ALJ found their opinions "unpersuasive" and determined that Bowles's depression was "severe." *Id.*

The ALJ concluded that Bowles has the following mental RFC: "The claimant can perform simple and some complex tasks. The claimant can relate to others. The claimant can adapt to a work situation (semi-skilled)." Tr. 15. The ALJ presented this RFC in a hypothetical question to a testifying vocational expert ("VE") (Tr. 48), whose testimony he analyzed in concluding that Bowles could perform "past relevant work," rendering him "not disabled" and thus ineligible for SSI. Tr. 20.

Bowles contends that substantial evidence does not support the ALJ's formulation of his mental RFC, which indicates an ability to perform complex tasks, because the ALJ did not rely on a medical opinion addressing how Bowles's depression affects his ability to work. ECF No. 19 at 12. He claims this was harmful error, citing the undersigned's recommendations in *Carrillo v. Saul*, No. 4:19-cv-00371-O-BP, 2020 WL 3442054 (N.D. Tex. June 4, 2020), *rec. adopted*, 2020 WL 3440884 (N.D. Tex. June 22, 2020), and *Alexander v. Saul*, No. 7:19-cv-00127-M-BP, 2020

WL 4573847 (N.D. Tex. July 9, 2020), *rec. adopted*, 2020 WL 4569034 (N.D. Tex. Aug. 7, 2020).

*Id.* at 12–13, 16. The Commissioner concedes that the ALJ failed to rely on a medical opinion, but

argues any failure does not require remand. ECF No. 20 at 3. Because *Carrillo* and *Alexander*

applied the Fifth Circuit's holding in *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), the inquiry

begins there.

### A.    *Ripley* and the Northern District of Texas.

Substantial evidence did not support the ALJ's RFC determination in *Ripley*, thus

warranting remand, because the record "d[id] not clearly establish . . . the effect [the claimant's]

condition had on his ability to work." *Ripley*, 67 F.3d at 557. The ALJ found Ripley not disabled

because he could perform sedentary work. *Id.* Even though the record included "a vast amount of

medical evidence," including "reports discussing the extent of Ripley's injuries," there were no

reports from "qualified medical experts" showing how Ripley's condition affected his ability to

complete sedentary work. *Id.* at 557 & n.27.

The Court recognizes *Ripley*'s proposition that reversible error lies where the "record does

not clearly establish" how an applicant's condition affects his ability to work. *Thornhill v. Colvin*,

No. 3:14-cv-335-M, 2015 WL 232844, at *10 (N.D. Tex. Dec. 15, 2014) (quoting *Ripley*, 67 F.3d

at 557), *rec. adopted*, 2015 WL 232844 (N.D. Tex. Jan. 16, 2015). Like Bowles, the claimant in

*Thornhill* alleged disability from depression, but was evaluated "not disabled." *Id.* at *1. Finding

the claimant's symptoms mild, the ALJ determined the claimant was less limited than did a

registered nurse, physician, and licensed professional counselor, yet more limited than did two

SAMCs. *Id.* at *9. The RFC determination reflected an ability to work, but was erroneous to the

extent it "added mental limitations . . . to accommodate for [the claimant's] mild symptoms." *Id.*

at *10. Even though adding mental limits suggested the ALJ was "simply giving [the claimant] the

benefit of the doubt as to what limitations might apply," the only supporting evidence was progress

notes that did not address work ability. *Id.* While the ALJ could depart from the relevant medical

opinions, it then "became incumbent upon the ALJ to obtain an expert medical opinion" to fill the

gap. *Id.* (citing *Ripley*, 67 F.3d at 557).

The Court again found reversible error where an ALJ determined a mental RFC after

rejecting the only medical opinions that could support the determination. *Fitzpatrick v. Colvin*, No.

3:15-cv-3202-D, 2016 WL 1258477, at *7–8 (N.D. Tex. Mar. 31, 2016). Two SAMCs found the

claimant's alleged mental impairment not severe, creating only mild issues with daily living; social

functioning; and "maintaining concentration, persistence, or pace." *Id.* at *7. The ALJ rejected

their opinions and found the plaintiff "more limited." *Id.* at *7 & n.6. The RFC provided that the

claimant could function in a "simple work environment" featuring "simple routine instructions"

and "occasional contact with coworkers and supervisors." *Id.* at *7. But only the rejected

consultants' opinions supported such an RFC. *Id.* at *8. Applying *Ripley* and *Thornhill*, the Court

construed the ALJ's RFC determination as an improper attempt to accommodate for the claimant's

mental impairments without relying on a supportive medical opinion. *Id.* at *7–8.

In *Ripley*, *Thornhill*, and *Fitzpatrick*, the ALJ's failure to obtain a medical opinion

addressing how the respective claimants' impairments affected their ability to work warranted

reversing and remanding the case. *See Ripley*, 67 F.3d at 557–58; *Thornhill*, 2015 WL 232844, at

*11; *Fitzpatrick*, 2016 WL 1258477, at *12. The undersigned's recommendations in *Carrillo*,

2020 WL 3442054, at *4–5, and *Alexander*, 2020 WL 4573847, at *3–4, reached similar

conclusions.

**B.**      **The lack of substantial evidence supporting Bowles's mental RFC causes prejudice and warrants remand.**

The record does not clearly establish the effects of Bowles's mental impairment—severe depression—on his ability to work. Just as in *Fitzpatrick* and *Thornhill*, the ALJ departed from the SAMCs' opinions (Tr. 52–61, 64–76; Exs. "B1A" and "B4A," respectively) and determined Bowles's depression was more limited and "severe." Tr. 18–19. The ALJ cited no other medical opinions in determining Bowles's mental RFC:

> We fully considered the medical opinions and prior administrative medical findings in your case as follows: The undersigned [ALJ] considered the findings and assessments of [SAMCs] at the initial and reconsideration levels assessing the claimant's residual mental functional capacity. [SAMCs] assessed the claimant's mental limitations as non-severe. (B1A; B4A) The undersigned [ALJ] finds the assessment to be unpersuasive. While the assessment finds some support due to the limited treatment of the claimant's depression, the claimant's responsiveness to medication, and mental status examinations within normal limits, the undersigned [ALJ] finds additional evidence introduced at the hearing level suggests a moderate limitation of the claimant's ability to concentrate, persist or maintain pace as discussed in this decision. Accordingly, the undersigned [ALJ] finds the claimant's depression to be severe.

Tr. 18–19. As in *Fitzpatrick*, the SAMCs' opinions support the mental RFC determination to some extent. Each acknowledges that Bowles had "Mild" issues involving his abilities to "Concentrate, persist, or maintain pace" and "Interact with others." Tr. 57, 70. And they opine, consistently with the ALJ's conclusion, that Bowles can perform "past relevant work" (Tr. 60) and is thus "Not Disabled." Tr. 61, 75. While the ALJ was free to reject the only cited opinions of record as "unpersuasive," it then became incumbent upon him to obtain a medical opinion supporting which work tasks Bowles could perform despite his depression. *Fitzpatrick*, 2016 WL 1258477, at *7 (applying *Thornhill*, 2015 WL 232844, at *10, and *Ripley*, 67 F.3d at 557–58).

This he did not do. Instead, just as in *Thornhill* and *Fitzpatrick*, the ALJ accommodated the RFC determination for Bowles's mental limits: "To accommodate [Bowles's] moderate limitation in his ability to concentrate, persist or maintain pace, the [RFC] limits [Bowles] to

7

perform simple and some complex tasks." Tr. 19. Because the ALJ did not cite a supportive medical opinion, the undersigned must conclude that he improperly used his lay interpretation of raw medical data to accommodate Bowles's severe depression. *See also Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009). Reversal is thus proper, even if the ALJ was simply giving Bowles "the benefit of the doubt" as to how his depression affects his ability to work. *Thornhill*, 2015 WL 232844, at *10.

The ALJ "has a duty to develop the facts fully and fairly" when the record lacks "reports from qualified medical experts" explaining how a claimant's condition affects his ability to work, "no matter how 'small'" the effects may be. *Ripley*, 67 F.3d at 557 & n.27. Developing the record helps prevent judges from playing the role of doctor, for which they are generally ill-equipped. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). The Commissioner insists "the Agency fulfilled its duty to develop the record when it arranged for Leon Morris, Ed.D, to perform a psychological consultative examination." ECF No. 20 at 9 (citing Tr. 456–60). However, because Dr. Morris's report does not explain how Bowles's depression affects his ability to work, the Commissioner's showing falls short.

Dr. Morris completed a mental status examination of Bowles (Tr. 454–61), which the ALJ cited in discussing Bowles's ability to "concentrate, persist, or maintain pace" during step three. Tr. 14. The mental RFC determination also appears to incorporate this portion of the ALJ's decision. *See* Tr. 18–19 (block quote above, next to last sentence). The decision cites Dr. Morris's examination in providing the following summary: "[Bowles] exhibited logical and goal directed thought processes with no delusion, suicidal or homicidal ideation, average or fair concentration, fair or intact memory, normal cognition, and a normal fund of knowledge. He was able to calculate serial sevens, add change, and spell 'world' forwards and backwards." Tr. 14. While this data

might support the mental RFC, including its determination that Bowles can perform "some complex tasks," the Court is unconvinced the data itself represents the needed expert "medical opinion." *See* 20 C.F.R. § 416.913(a)(2) (definition). Although the SAMCs' opinions, which the ALJ rejected, addressed Bowles's ability to perform past relevant work and overall disability status, Dr. Morris never similarly assessed how Bowles's mental impairment affected his ability to work. *See* Tr. 460; *see also Winston v. Berryhill*, 755 F. App'x 395, 403 (5th Cir. 2018) (citing 20 C.F.R. § 404.1527(a)(2)) ("[T]he definition of a 'medical opinion' requires both an evaluation of symptoms and an expression of judgment regarding a claimant's capabilities and restrictions."). As the Commissioner recognizes, Dr. Morris "declined to provide a prognosis or a functional capacity evaluation." ECF No. 20 at 9.

Just like in *Ripley*, the Commissioner points to a "vast amount" of additional evidence suggesting the mental RFC determination is consistent with the finding of severe depression. ECF No. 20 at 5–7; *see Ripley*, 67 F.3d at 557. Nowhere does the Commissioner contend this evidence constitutes the needed medical opinion. The Commissioner questions, however, whether Bowles has met his burden to show harmful error. ECF No. 20 at 9–10; *see also Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012). The error in developing the record was harmful enough. *Ripley*, 67 F.3d at 557 n.22 ("Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision.").

Even so, Bowles also met his burden by identifying opinion evidence contrary to the ALJ's mental RFC determination, namely Global Assessment of Functioning scores ("GAF scores"). ECF No. 19 at 7–8, 14–16. GAF scores measure an individual's psychological, social, and occupational functional level. *Boyd*, 239 F.3d at 700 n.2 (quoting AM. PSYCHIATRIC ASS'N,

DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994)). Scores ranging

from 41 to 50 can indicate "serious symptoms," including occupational impairment. *Id.* at 702

(quoting AM. PSYCHIATRIC ASS'N, at 32). Bowles identifies nine instances in the administrative

record where medical personnel determined his GAF score was 49. ECF No. 19 at 14–15 (citing

Tr. 403, 414, 424, 436, 463, 474, 491, 601, 616).

     The Commissioner does not dispute whether this evidence exists or reflects a medical

opinion, but does question the evidentiary weight to which it is entitled. ECF No. 20 at 8–9. Indeed,

GAF scores do not necessarily show disability. *Hawkins v. Astrue*, No. 3:09-cv-2094-BD, 2011

WL 1107205, at *6 n.4 (N.D. Tex. Mar. 25, 2011). But failing to explain the weight assigned to

them is "reversible legal error" justifying remand. *Ayala v. Saul*, No. 7:19-cv-00024-O-BP, 2020

WL 1226879, at *4 (N.D. Tex. Mar. 13, 2020). Here, the ALJ's ten-page decision does not mention

Bowles's GAF score.

     The touchstone for assessing prejudice is whether errors "cast into doubt the existence of

substantial evidence to support the ALJ's decision." *Morris*, 864 F.2d at 335. The unexplained

GAF score, coupled with the absence of a medical opinion addressing Bowles's ability to work

given his depression, casts doubt on the ALJ's decision. Because substantial evidence does not

support the ALJ's decision, remand is proper on this point.

     **C.**     **The ALJ's decision relied on VE testimony elicited from a defective hypothetical question.**

     Because substantial evidence does not support the mental RFC, it follows that the RFC-

based hypothetical question posed to the VE should be revisited on remand. A hypothetical

question is defective unless it "incorporate[s] reasonably all disabilities of the claimant recognized

by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies

in the ALJ's question by mentioning or suggesting to the [VE] any purported defects." *Bowling v.*

*Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). The defective question constitutes reversible error if the ALJ's decision denying disability relied on the VE's testimony elicited from the question. *See id.*; *see also Boyd*, 239 F.3d at 708.

Here, the ALJ's hypothetical included the mental RFC determination: "First hypothetical, please assume . . . individual can perform simple and some complex tasks, relate to others, the individual can adapt to a work situation, semi-skilled work." Tr. 48 Because Bowles's counsel cross examined the VE during the hearing, but did not mention or suggest any defects in the question based on its mental RFC portion (Tr. 50–51), the question is only defective if it did not reasonably incorporate Bowles's ALJ-recognized limitations. *See Bowling*, 36 F.3d at 436; *Boyd*, 239 F.3d at 707.

The question could not reasonably incorporate Bowles's ALJ-recognized limitations because it was based on the mental RFC determination, which substantial evidence does not support. Finding the RFC unsupported "necessarily" impacts the RFC-based hypothetical question. *Lagrone v. Colvin*, No. 4:12-cv-792-Y, 2013 WL 6157164, at *6 (N.D. Tex. Nov. 5, 2013), *rec. adopted*, 2013 WL 6157164, at *1 (N.D. Tex. Nov. 22, 2013). The question's statement that Bowles can perform "some complex tasks" also conflicts with the ALJ's specific recognition that Bowles has moderate concentration, persistence, or pace limits (Tr. 18–19), as these limits restrict claimants to performing simple but not complex tasks or instructions. *See, e.g.*, *Bordelon v. Astrue*, 281 F. App'x 418, 423 (5th Cir. 2008); *Smith v. Colvin*, No. 3:13-cv-1884-N-BN, 2014 WL 1407437, at *4 (N.D. Tex. Mar. 24, 2014), *rec. adopted*, 2014 WL 1407440 (N.D. Tex. Apr. 11, 2014). Indeed, the ALJ articulated the phrase "some complex tasks" when he improperly accommodated the RFC for Bowles's moderate limitations without citing any supportive medical opinion. Tr. 19. The undersigned thus concludes the question was defective.

The defective question also prejudiced Bowles because the ALJ relied on testimony the question elicited from the VE. *See Boyd*, 239 F.3d at 708 ("Because the ALJ relied on testimony elicited by a defective hypothetical question, the ALJ did not carry his burden to show that despite [Claimant's] impairments, [Claimant] could perform available work."). Here, the ALJ asked the VE whether Bowles's past relevant work ("PRW") as an industrial cleaner, sales attendant, and mattress salesperson, would be available based on the hypothetical question. Tr. 48–49. The VE answered "Yes" to each PRW (*id.*), and the ALJ "accept[ed] this testimony" as "consistent" with the Dictionary of Occupational Titles and as otherwise persuasive given the VE's professional background. Tr. 20. The ALJ then reasoned Bowles was not disabled: "Accordingly, in comparing [Bowles's RFC] with the physical *and mental demands* of this [PRW], the undersigned finds that [Bowles] is able to perform it as actually and generally performed." *Id.* (emphasis added).

It is not "inconceivable" the ALJ could reach a different conclusion by correcting the defective question on remand. *See Frank*, 326 F.3d at 622 (assessing prejudice). After the ALJ obtains an expert medical opinion addressing how Bowles's ALJ-recognized severe depression affects Bowles's ability to work, the ALJ may change the mental RFC. A different mental RFC means a different hypothetical question for the VE who, if asked a different question, might testify differently in response. Because the ALJ relied on the VE's testimony in comparing Bowles's mental RFC with the "mental demands" of his PRW (Tr. 20), different VE testimony would impact the ALJ's comparison and, conceivably, the disability conclusion. Consequently, the defective question prejudiced Bowles, and so remand is proper on this point too.

## IV.    CONCLUSION

The undersigned thus **RECOMMENDS** that Judge O'Connor **REVERSE** and **REMAND** this action for further administrative proceedings.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on October 19, 2021.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

13